AUSA: Remy Grosbard

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**24 MAG 3775**

UNITED STATES OF AMERICA

v.

JOSE MEDINA,

Defendant.

**COMPLAINT**

Violations of 18 U.S.C. § 2252A

COUNTY OF OFFENSE:
BRONX

SOUTHERN DISTRICT OF NEW YORK, ss.:

AUDRA HAMPSCH, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

**COUNT ONE**
**(Distribution of Child Pornography)**

1. In or about September 2024, in the Southern District of New York and elsewhere, JOSE MEDINA, the defendant, knowingly received and distributed material that contained child pornography using a means and facility of interstate and foreign commerce and that had been mailed and had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, JOSE MEDINA distributed a file containing sexually explicit images of a minor from a cellphone in the Bronx, New York via WhatsApp.

(Title 18, United States Code, Sections 2252A(a)(2)(B) and (b)(1).)

**COUNT TWO**
**(Possession of Child Pornography)**

2. In or about September 2024, in the Southern District of New York and elsewhere, JOSE MEDINA, the defendant, knowingly possessed and accessed with intent to view a book, magazine, periodical, film, videotape, computer disk, and other material that contained an image of child pornography that had been mailed, shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit, MEDINA possessed sexually explicit images of minors, including images of prepubescent minors and minors who had not attained 12 years of age, in the Bronx, New York.

(Title 18, United States Code, Sections 2252A(a)(5)(B) and (b)(2).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I have been a Special Agent with the FBI for approximately 2 years and have been assigned to investigate violations of criminal law relating to the sexual exploitation of children.

4. I have been personally involved in the investigation of this matter. I am familiar with the information contained in this Complaint based on my participation in the investigation, my review of documents, my conversations with other law enforcement officers, and my training and experience. Because this Complaint is being submitted for the limited purpose of establishing probable cause to arrest the defendant, I have not included the details of every aspect of the investigation. Where actions, conversations, and statements of others are related herein, they are related in substance and in part, except where otherwise indicated.

***Investigation by the New Mexico State Police***

5. Based on my involvement in the investigation, including my conversations with other law enforcement officers, and my review of documents and communications, I have learned the following:

a. On or about September 30, 2024, Statewide Central Intake for the Children, Youth, and Families Department ("CYFD") for the State of New Mexico, received a report from child protective services in the State of Washington ("Child Protective Services"). Child Protective Services informed Statewide Central Intake in New Mexico that Child Protective Services received an anonymous report from an individual (the "Anonymous Reporter") who said that he/she was a family friend with concerns about possible sexual abuse of children. Based on my review of the report, I know that the Anonymous Reporter said that two days prior, the Anonymous Reporter had spoken to JOSE MEDINA, the defendant, who was then residing in New York, and who is the ex-partner of a particular female ("Female-1"). The Anonymous Reporter identified MEDINA by his name and birth date, which based on my review of law enforcement reports and records, I know is the birth date of JOSE MEDINA, the defendant. The Anonymous Reporter stated that there were videos of Female-1's two minor children who were approximately 7 and 9 years old ("Victim-1" and "Victim-2," and collectively the "Victims"), engaged in sexual acts with Female-1. In particular, there were videos where one of the Victims was "fucking the mothers vagina" and another Victim "was naked sitting on her face." The Anonymous Reporter stated that MEDINA recorded the videos and did so because one of the Victims "wanted to see what it looked like." The Anonymous Reporter also stated that this happens all the time and the videos the Anonymous Reporter described was taken in the last two months.

b. Later that day, on or about September 30, 2024, a New Mexico State Police officer ("Officer-1") and an employee of CYFD (the "CYFD Employee") performed a welfare check at a particular house in Farmingdale, New Mexico (the "Farmingdale Residence"), where Female-1 was then living with her aunt, uncle, and Victims-1 and -2. Officer-1 and the CYFD Employee conducted a voluntary interview with Female-1, who identified herself as Female-1. Based on my review of law enforcement reports summarizing the welfare check, I know that after Officer-1 and the CYFD Employee told Female-1 that there was supposedly a video taken of Female-1 and Victims-1 and -2 performing sexual acts, Female-1 stated, in sum and substance, "that is because I got forced to drink alcohol. I had no idea what was going on." Female-1 further

stated, in sum and substance, that she and JOSE MEDINA, the defendant, dated for four years and lived with Victims-1 and -2 in their truck for part of that time; that she did not know when MEDINA took the video and did not know that MEDINA had recorded anything; and that MEDINA was physically and mentally abusive toward Victims-1 and -2. Female-1 also stated, in sum and substance, that MEDINA had been living at the Farmingdale Residence but was kicked out a few weeks before; that MEDINA's last known location was somewhere in Colorado; that she believed MEDINA was going to Chicopee, Massachusetts, because that is where his best friend lives; and that MEDINA has family in the Bronx, New York.

c. On or about October 3, 2024, child/adolescent forensic interviews were conducted of each of Victims-1 and -2 (the "CAFIs"). Based on my review of law enforcement reports and records, I know that at some point prior to the CAFIs, Female-1 told the CYFD Employee that JOSE MEDINA, the defendant, had pierced both Victims-1 and -2's penises, but that they no longer have the piercings. Based on my review of law enforcement reports and records summarizing the CAFIs, I know the following:

i. Victim-1 stated, in sum and substance, that Victim-1 met JOSE MEDINA, the defendant, approximately four years ago; that MEDINA burned him with a lighter; that MEDINA also had a "zapper"—which was electric, pink, and had two metal rods or wires and a red light—that MEDINA would use on Victim-1's back and other body parts, as well as on Victim-1 and Victim-2's private parts; that MEDINA beat Victim-1 and Victim-2 while their mother, Female-1, was driving; that MEDINA broke a stick on Victim-1 and used it to hit Victim-1; that MEDINA had put Bengay cream on Victim-1's private parts; and that MEDINA, along with Female-1, had pierced both Victim-1 and Victim-2's private parts.

ii. Victim-2 stated, in sum and substance, that JOSE MEDINA, the defendant, cut Victim-2 with a knife; that MEDINA had many different knives; that MEDINA always carries a knife on him; that MEDINA had burned him on his leg and face; that MEDINA would bite the Victim's thumbs; and that Victim-2 could not remember if MEDINA or anyone else ever touched a private part of his body that they were not supposed to touch. Victim-2 was asked whether MEDINA had pierced parts of Victim-2's body, other than Victim-2's ears, and whether Victim-2 would tell anyone if MEDINA had done so. Victim-2 said, "probably not."

d. The same day, on or about October 3, 2024, according to law enforcement reports and records, Female-1 told Officer-1 that she wanted to report a missing or stolen .22 caliber 10 shot rifle. Female-1 stated that the firearm went missing two years before and believes that JOSE MEDINA, the defendant, may have taken it while they were in New York.

e. On or about October 16, 2024, Female-1 contacted New Mexico State Police. Based on my review of law enforcement reports and records, I know that, among other things, Female-1 informed the New Mexico State Police that Female-1 wanted to shut off a phone that JOSE MEDINA, the defendant, had taken from her. According to Female-1, she had gotten MEDINA a phone and added him to her business account for three years, and also had gotten him a new Samsung phone in approximately March 2024. Female-1 also told New Mexico State Police that one of Female-1's friends informed Female-1 that MEDINA was back in New York. Female-1's friend further told Female-1 that MEDINA had shared a video of Female-1 and her children, *i.e.*, Victims-1 and -2, engaged in sexual activity. Female-1's friend advised Female-1 that

MEDINA was "just sharing the video with anybody." Female-1's friend further advised Female-1 that MEDINA was bragging about selling Female-1's phone to someone.

f. On or about October 18, 2024, Female-1 contacted the New Mexico State Police again. Based on my review of law enforcement reports and records, I know that Female-1 told the New Mexico State Police that she learned that JOSE MEDINA, the defendant, had traded in his original cellphone and was using a new phone.

g. The same day, on or about October 18, 2024, the Farmingdale Police Department received information from an employee with Child Protective Services in the State of Washington. Based on law enforcement reports and records that I have reviewed, the Child Protective Services employee told the Farmingdale Police Department that it had received information from a family friend of Victims-1 and -2 ("Female-2"). Female-2 informed Child Protective Services that JOSE MEDINA, the defendant, sent her videos depicting a male filming Victims-1 and -2 engaged in sexual intercourse and other sexual contact with Female-1. The Farmingdale Police Department's investigators thereafter came into possession of four videos for review (the "Videos"). Officer-1 and another New Mexico State Police officer reviewed the Videos in order to identify the individuals in the Videos, and they identified Female-1 and Victims-1 and -2, based on their prior interactions with Female-1 and Victims-1 and-2.

h. I have also reviewed the Videos, and based on my review of the Videos, I know that there are four short videos. In two of the videos, which are nearly identical, the operator of the camera was in the front seat of a truck and was pointing the camera to the back of the truck where there was a bed. Female-1 was blindfolded and naked in the bed. Victims-1 and -2 were also naked and rubbing oil on Female-1's body, including her breasts. During the video, a man's voice can be heard coaching Victims-1 and -2 about what to do as they rubbed Female-1's body. In the other two videos, which are similar in content to each other, the setting was the same as in the first two videos. In these videos, one of the Victims can be seen inserting his penis inside Female-1's vagina and engaging in sexual intercourse with Female-1. The other Victim can be seen laying diagonally across Female-1's forehead, with his genitals appearing to be inserted into Female-1's mouth.

i. On or about October 18, 2024, CYFD in New Mexico took temporary emergency custody of Victims-1 and -2. Based on law enforcement reports and records, I know that Victims-1 and -2 are approximately 7 and 9 years old.

j. The same day, on or about October 18, 2024, when CYFD arrived at the Farmingdale Residence to take temporary emergency custody of Victims-1 and -2, Officer-1 spoke with Female-1 again. Based on my review of law enforcement reports and records, I know that Female-1 told Officer-1, in sum and substance, that JOSE MEDINA, the defendant, was living with his mother, brother, and niece in the Bronx, New York.

***Corroboration from Female-2 and Historical Cell Site Location Information***

6. Based on my review of law enforcement report and records, my review of certain WhatsApp messages, and my conversations with Female-2, I know the following:

a. Female-2 has known Female-1 for approximately 10 years.

b. On or about September 28, 2024, Female-2 received WhatsApp messages, videos, and voice memos from JOSE MEDINA, the defendant, from a particular cellphone (the "MEDINA Cellphone"), who is saved in Female-2's phone as "Indo." Based on my review of MEDINA's public social media and law enforcement reports and records, I know that a nickname for MEDINA is "Indio." Based on my conversations with Female-2, Female-2 has approximately ten videos that MEDINA sent her depicting the Victims being sexually abused.[1] According to Female-2, in some of the videos Female-1 was lying naked in the back of a semi-truck with Victims-1 and -2. Female-1 and Victims-1 and -2 are all naked in these videos with one of the Victim's genitalia exposed, and Victims-1 and -2 are giving Female-1 a body massage. In another video, Female-1 is having sexual intercourse with one of the Victims and the other Victim is sitting on Female-1. MEDINA told Female-2 that he filmed the videos. According to Female-2, in one video that MEDINA shared with Female-2, which I have not seen, MEDINA can be seen in the front seat of the vehicle in underwear. Female-2 also told me that MEDINA told her that much of the sexual abuse occurred not only in Female-1's truck, but also in the basement of the house where Female-1 and MEDINA were living in New Mexico, presumably the Farmingdale Residence.

7. Based on my review of records, including historical cell site location information, from a mobile services provider, I know the following:

a. The subscriber of the MEDINA Cellphone has been Female-1 since on or about December 6, 2022. Based on my review of records from Google, I know that the MEDINA Cellphone is a Samsung device.

b. Based on historical cell site location information, I know that from in or about August 24, 2024 through in or about September 13, 2024, the MEDINA Cellphone was located in or around Bloomfield, New Mexico and Farmingdale, New Mexico.

c. Based on historical cell site location information, I know that from in or about September 13, 2024 through in or about September 14, 2024, the MEDINA Cellphone was located in or around Durango, Colorado.

d. Based on historical cell site location information, I know that from in or about September 13, 2024 through in or about September 14, 2024, the MEDINA Cellphone was located in or around Durango, Colorado and, on or about September 14, 2024, the Dallas Fort Worth Airport in Texas.

e. Based on historical cell site location information, I know that from in or about September 14, 2024 through at least in or about October 2, 2024, the MEDINA Cellphone was located exclusively in the Bronx, New York. Based on records from a mobile services

[1] In a phone conversation I had with Female-2 on or about October 18, 2024, Female-2 recalled receiving WhatsApp messages, videos, and voice memos from JOSE MEDINA, the defendant, between on or about September 30, 2024 and on or about October 2, 2024, depicting sexual abuse. Based on my review of screenshots that Female-2 sent me from her phone, I know that MEDINA sent her WhatsApp messages and videos on or about September 28, 2024. Based on my experience, I know that WhatsApp is a phone application that allows users to transmit messages, photographs and videos.

provider, I know that the MEDINA Cellphone was turned off on or about October 2, 2024, and has not been turned back on since then.

***Corroboration from JOSE MEDINA***

8. Based on my review of law enforcement reports and records, I know that on or about September 30, 2024, JOSE MEDINA, the defendant, obtained a New York driver's license, which is associated with a particular address in the Bronx, New York (the "Bronx Residence"), where MEDINA's mother resides.

9. On or about October 19, 2024, the Honorable Sarah L. Cave, United States Magistrate Judge in the Southern District of New York, authorized a warrant (the "October 19 Warrant") for the search and seizure of particular items and electronically stored information to be found in the Bronx Residence and on the person of JOSE MEDINA, the defendant.

10. Based on my participation in the execution of the October 19 Warrant on or about October 19, 2024, I know the following:

a. JOSE MEDINA, the defendant, was not present at the Bronx Residence when the October 19 Warrant was executed. MEDINA's mother and one of MEDINA's brothers ("Brother-1") were present at the Bronx Residence, and they informed me that MEDINA had left the Bronx Residence approximately 30 minutes before. They also informed me that MEDINA had been living at the Bronx Residence for approximately two weeks, since MEDINA and Female-1 had ended their relationship.

b. MEDINA's mother told me and other law enforcement officers that MEDINA got a new cellphone between on or about September 30, 2024 and on or about October 2, 2024.

c. MEDINA's mother stated that she had not seen videos of Female-1 engaged in sexual acts with Victims-1 and -2.

d. Brother-1 told me, in sum and substance, that MEDINA had recently removed a firearm from the Bronx Residence and, in sum and substance, that he was told by MEDINA that MEDINA took the firearm from Female-1.

11. On or about October 24, 2024, I received a phone call from a different brother (*i.e.*, not the brother at the Bronx Residence on or about October 19, 2924) ("Brother-2") of JOSE MEDINA, the defendant. Brother-2 told me, in sum and substance, that MEDINA was ready to turn himself in. Brother-2 also told me that Brother-2 wanted to speak with law enforcement the next day, *i.e.*, October 25.

12. On or about October 25, 2024, Brother-2 came to meet with law enforcement offices at a particular address in New York, New York. JOSE MEDINA, the defendant, came with Brother-2. MEDINA, who was not under arrest at the time, voluntarily agreed to be interviewed by law enforcement. During that interview, MEDINA stated, in sum and substance, the following:

a. MEDINA sent videos of Female-1 and Victims-1 and -2 to three different people in or around the time that MEDINA was staying at his mother's house in the Bronx, New York—that is, the Bronx Residence. MEDINA sent the videos to these individuals after September 15, 2024. MEDINA remembers that date because September 15 is his birthday.

b. MEDINA sent the videos using the MEDINA Cellphone, which Female-1 paid for.

c. MEDINA only saw sex abuse between Female-1 and Victims-1 and -2 occur on one occasion. MEDINA recorded it because one of the victims asked him to. MEDINA recorded it on his phone. MEDINA stated the sex abuse occurred in or about July 2024 at a truck stop, and he believed the truck stop was in Montana.

d. The three people to whom MEDINA sent the videos included a friend in Massachusetts, a family member in the Bronx, and Female-2 in Washington.

e. Female-2 instructed MEDINA to destroy the MEDINA Cellphone, and MEDINA did so. MEDINA no longer has the videos, but the videos were on Female-2's phone.

f. MEDINA sent Female-2 the videos over WhatsApp.

g. MEDINA could only remember the content of one of the Videos, although he knew there were multiple Videos. In the Video that MEDINA could recall, MEDINA said, in sum and substance, that Victims-1 and -2, both of whom were naked, were massaging Female-1, who was also naked. MEDINA stated, in sum and substance, that he did not know about videos of Victims-1 and -2 having sex with Female-1. MEDINA also stated, in sum and substance, that he taught Victims-1 and -2 how to massage Female-1's shoulders and neck, but that MEDINA told the Victims that he would take care of massaging everything else. MEDINA further stated, in sum and substance, that he was disgusted that it was a massage of more than just Female-1's neck and shoulders.

13. Based on my involvement in this investigation, I know that on or about October 25, 2024, JOSE MEDINA, the defendant, was arrested based on probable cause that MEDINA distributed child pornography and possessed child pornography.

WHEREFORE, I respectfully request that JOSE MEDINA, the defendant, be arrested, and imprisoned or bailed, as the case may be.

AUDRA HAMPSCH
Special Agent
Federal Bureau of Investigation

Sworn to before me this 25th day of October, 2024.

THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York